**Affirmed and Memorandum Opinion filed August 16, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00209-CV

---

## IN THE INTEREST OF F.H., A Child

---

**On Appeal from the 328th District Court
Fort Bend County, Texas
Trial Court Cause No. 16-DCV-235493**

---

## M E M O R A N D U M   O P I N I O N

Appellant, J.H. (Father) appeals the trial court's decree terminating his parental rights to F.H. (Fiona).[1] Father contends the evidence was legally and factually insufficient to support the trial court's findings as to the predicate grounds on which his parental rights were terminated and that termination was in Fiona's best interest. We affirm.

---

[1] We use pseudonyms to refer to the child in this case. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8.

# BACKGROUND

The Department received a referral in August 2016 alleging neglectful supervision of Fiona by P.V. (Mother). It was reported that Mother had given Fiona to a cousin and was planning to give the cousin custody of Fiona. Mother had been hospitalized for alcohol poisoning and substance abuse. After being released from the hospital, Mother made suicidal threats and demanded Fiona back.

The caseworker spoke to maternal grandmother who did not have a phone number for Mother and did not know where Mother was living. She thought Fiona was with Mother. The caseworker then spoke to paternal grandmother who stated Father was in jail and she was unsure of Mother's and Fiona's whereabouts.

In September 2016, the caseworker was informed that Mother was in jail and Fiona was with paternal grandmother. Paternal grandmother brought Fiona to the Department's office. Mother told the caseworker she was arrested for driving while intoxicated. Father told the caseworker he was arrested in August of 2016 and had not met Fiona. Fiona was placed in a Parental Child Safety Placement with Mother's cousin and his wife.

Mother and Father had previous involvement with the Department in relation to their older children, G.P. (Grace) and M.H. (Martin). The Department received a referral in December of 2015 alleging neglectful supervision by Mother and Father. Grace was placed with her biological father. The Department was granted temporary conservatorship over Martin and he was placed with an aunt and uncle. An order terminating Mother and Father's parental rights to Martin was introduced as an exhibit at trial.

# PROCEDURAL HISTORY

On September 16, 2016, the Department filed an original petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship. An emergency order was entered on September 16, 2016 granting the Department temporary sole managing conservatorship of Fiona. This appointment was continued by order after an adversary hearing on September 29, 2016.

## 1.    Trial Proceedings

*Evidence about Father*

Father was in jail when the Department first became involved in the case with pending charges related to the assault of Mother. The alleged assault occurred on August 17, 2016 while Mother was pregnant with Fiona, who was born a few days later. Maternal grandmother testified that Mother came to her home after the alleged assault and was injured with a bump on her head. At trial, Mother testified that Father was in jail facing charges that he assaulted her prior to Fiona's birth. Mother testified that at the time of the alleged assault, Father was living with paternal grandmother. When Father was released from jail, he again lived with paternal grandmother.

Father was in jail the majority of the time while the case involving Fiona was pending. Father had not completed any of the court-ordered services. Father had not paid any child support and had never seen Fiona. During a hearing in January 2017, Father spoke to the caseworker about Fiona and asked to see her. The caseworker set up a visitation date and Father did not show up. The caseworker continued to set up visitation times and "the caregiver came constantly for two or three months waiting for a visit." Father never showed up for a visit. The caseworker testified that she thought Fiona was emotionally injured by Father.

The caseworker testified that she did not believe Father could provide Fiona with a safe and stable home because he was in jail. The caseworker testified Father currently had pending charges for aggravated assault with a deadly weapon against Mother. Further, the caseworker testified that Father had four felony burglary charges that were pending. She testified that when the Department first became involved with the family, when Martin came into custody, Father had just been released from parole. She was not aware of Father having stable housing or a job during the case.

The Department investigator testified there "was a lot of criminal history" in paternal grandmother's home. Father's sister and brother-in-law lived in the house and they had criminal history. The investigator believed Mother and Father were living there when there was a prior Department case involving drug use and domestic violence. Father was living in that home when he was arrested on the assault charge. The investigator believed Father and Mother were abusing drugs while living in that home.

Fiona's guardian ad litem testified that she believed Father had harmed Fiona when "he beat [Mother]" while she was carrying Fiona. Further, she testified that Father is not able to avoid domestic violence or using drugs and is unable to work to financially support Fiona.

The current caregiver testified that she had done nothing to exclude Father from having access to Fiona. She had never received a phone call from Father asking about Fiona. The current caregiver took Fiona for visits at the Department's office for two to three months but Father never showed up.

The Department attempted to call Father as a witness at trial. However, Father's counsel objected based on the Fifth Amendment. The trial court sustained the objection and denied the Department's request to call Father as a witness.

The indictment charging Father with aggravated assault with a deadly weapon was introduced into evidence. It alleges Father caused bodily injury to Mother by striking her with a glass bottle on or about August 17, 2016. Also introduced into evidence is a bail bond for Father dated June 12, 2017. It states Father was arrested on June 5, 2017, for felony burglary of a building. Drug tests results introduced at trial indicated Father tested positive for cocaine and cocaine metabolites on December 23, 2015, during the Department case related to Martin.

The clerk's record[2] contains an affidavit filed by a caseworker for the Department in support of emergency relief that avers Father has the following criminal history:

- 6/22/2001 burglary of a building – convicted and confined for 180 days;
- 4/22/2002 burglary of building – convicted and disposition referred to a magistrate;
- 8/15/2005 criminal mischief between $50 and $500 – disposition held;
- 6/1/2006 possession of marijuana under 2 ounces – convicted and confined for 20 days;
- 11/23/2007 possession of marijuana under 2 ounces – convicted and confined for 25 days;
- 3/17/2009 unlawfully carrying a weapon – convicted and confined for 30 days;
- 3/8/2010 burglary of a habitation – convicted of a lesser charge and confined for 166 days;
- 3/8/2010 theft of property between $1,500 and $20,000 – disposition released without prosecution;

---

[2] We presume the trial court took judicial notice of its record without any request being made and without any announcement that it has done so. *See In re A.W.B.,* No. 14–11–00926–CV, 2012 WL 1048640, at *3 (Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem. op.) (presuming trial court took judicial notice of order adopting family service plan). *In the Interest of C.M.C.,* 14–12–00186–CV, 2012 WL 3871359 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.).

5

- 12/7/2010 burglary of a building – convicted and confined for 12 months;
- 3/1/2011 theft of a firearm – disposition referred to magistrate;
- 6/28/2011 aggravated robbery – convicted of lesser charge and confined for 3 years;
- 4/25/2013 burglary of a building – convicted and confined for 12 months;
- 6/27/2015 theft of property less than $50 with previous conviction – convicted and confined for 15 days;
- 5/8/2016 evading detention– disposition referred to magistrate; and
- 8/18/2016 aggravated assault with a deadly weapon of family member - disposition referred to magistrate.

Further, the affiant states that on December 19, 2015, the Department received a referral of neglectful supervision of Grace and Martin by Mother and Father. "It was reported that [Father] smokes crack cocaine on daily basis in the house around the children. . . . Mother has knowledge of Father smoking crack cocaine . . . Father and Mother get into fist fights with the children present in the same room. Law enforcement has been called out on several occasions due to the domestic violence in the home." The record reflects in a Family Service Plan dated October 23, 2016, Father admitted to using cocaine in 2015.

*Evidence about Fiona*

Fiona has been in her current placement, with Mother's cousin and his wife, since she was three weeks old. The caseworker testified that she has no concerns with Fiona's current placement with Mother's cousin and his wife. She stated it is nourishing, safe, and stable. The caregivers are committed to caring for Fiona and put her well-being first and foremost. They are meeting her emotional and physical needs. The CASA advocate testified the interactions between Fiona and the

caregivers were that of a loving family unit. Additionally, Fiona's caregiver testified that Fiona visits her brother, Martin, regularly.

The caseworker testified Fiona does not know Mother and Father. The current caregivers intend to adopt Fiona. The caseworker did not think giving the current caregivers conservatorship and not terminating Mother and Father's parental rights would accomplish the goal of obtaining a safe and stable home for Fiona. She felt Fiona needed stability in her life.

### 2. Trial Court Decree

On February 22, 2018, the trial court entered a final decree terminating Mother's[3] and Father's parental rights to Fiona. The decree terminated Father's parental rights under section 161.001(b)(1)(D), (E), (F), (M), (N), and (O). The trial court also found that termination of Father's parental rights was in the best interest of Fiona. This appeal followed.

## ANALYSIS

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West Supp. 2016); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

### A. Standard of Review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

---

[3] Mother did not appeal the termination of her parental rights.

Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.— Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant

that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

**B.    Predicate Termination Grounds**

Father challenges the legal and factual sufficiency of the evidence supporting the trial court's judgment terminating his parental rights to Fiona under sections 161.001(b)(1)(D), (E), (F), (M), (N), and (O). Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We first evaluate whether termination was proper under section 161.001(b)(1)(E).

Termination may be ordered under subsection E, if the trial court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). Under subsection E, the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In this context, endanger means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). A child is endangered when the environment creates

a potential for danger that the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477.

Termination under subsection E must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re T.N.*, 180 S.W.3d at 383; *see also In re J.O.A.*, 283 S.W.3d at 345 (holding that endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *In re J.O.A.*, 283 S.W.3d at 345 ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."). Further, neglect can be as dangerous to a child's emotional or physical health as intentional abuse. *In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013), *aff'd*, 437 S.W.3d 498 (Tex. 2014). Additionally, evidence as to a parent's treatment of another child is relevant to whether a course of conduct under subsection E has been established. *In re D.T.*, 34 S.W.3d 625, 636–37 (Tex. App.—Fort Worth 2000, pet. denied).

As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re J.O.A.*, 283 S.W.3d at 345. Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment under subsection E. *See In re A.R.M.*, No. 14-13-01039-CV, 2014 WL 1390285, at *8 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.);

*In re C.A.B.*, 289 S.W.3d at 886. Likewise, illegal drug use may support termination under subsection 161.001(b)(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Further, abusive or violent conduct by a parent can produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). If the evidence proves a course of conduct that has the effect of endangering the child, the requirement of subsection E is met. *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.) (citing *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533-34 (Tex.1987)).

Father contends the evidence is insufficient to establish that he endangered Fiona as he did not physically harm her and was in jail for the majority of her life. Additionally, Father contends that the evidence introduced was related to pending criminal charges such that the terms of any punishment or confinement remained speculative. The Department responds that Father's history of drug use, criminal history, and failure to visit or meet Fiona supports the trial court's finding.

When the Department was involved with the family related to Martin, Father had recently been released from parole. There was evidence in the record that Father tested positive for cocaine and cocaine metabolites in 2015 during the Department proceedings involving Martin, Father admitted to using cocaine, and Mother stated that Father used cocaine. A parent's drug use may qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *In re S.R.*, 452 S.W.3d 351, 361–62 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also In re C.A.B.,* 289 S.W.3d at 885.

Additionally, Father was indicted for aggravated assault with a deadly weapon of Mother in August of 2016 while she was pregnant with Fiona. Maternal

grandmother testified that she witnessed the injury to Mother following that assault. "Abusive and violent criminal conduct by a parent can produce an environment that endangers the well-being of his children." *In the Interest of Q.M.*, No. 14-17-00018-CV, 2017 WL 1957746, at *9 (Tex. App.—Houston [14th Dist.] May 11, 2017, pet. denied) (mem. op.); *see also In re J.I.T.P.*, 99 S.W.3d at 845. ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment.").

The indictment also alleges Father was previously convicted of felony robbery committed on June 25, 2013. There was uncontradicted testimony at trial that Father had four pending felony burglary charges. The record contains evidence of Father's criminal history for sixteen years before the trial in this case. During that time, Father has repeatedly been sentenced to confinement. "Endangerment may include evidence that a parent has been imprisoned." *In re U.P.*, 105 S.W.3d 222, 233–34 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also Boyd,* 727 S.W.2d at 533 (holding that "imprisonment is certainly a factor to be considered by the trial court on the issue of endangerment"); *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ) (holding imprisonment alone can be demonstrative of a course of conduct that endangers the emotional well-being of a child); *In the Interest of J.J.,* 911 S.W.2d 437, 440 (Tex. App.—Texarkana 1995, writ denied) (affirming termination of parental rights of father who was frequently jailed, used crack cocaine, and abused wife in presence of children).

The evidence introduced at trial showed Father was incarcerated when Fiona was born and when the Department became involved in the case. Father was released for a period of time while the case was pending; however, he was again incarcerated at the time of trial. Father had not visited with Fiona during the case while out of jail

even though visitation had been set up by the Department. No evidence was offered as to why Father did not visit Fiona.

Father's absence from Fiona's life, coupled with his incarcerations, criminal history, and drug use create a course of conduct from which the factfinder could have determined Father endangered Fiona's emotional and physical well-being. *See In re Z.N.M.*, No. 14-17-00650-CV, 2018 WL 358480, at *6–7 (Tex. App.—Houston [14th Dist.] Jan. 11, 2018, no pet.) (mem. op.); *In re Q.M.*, 2017 WL 1957746, at *9; *In re V.V.*, 349 S.W.3d 548, 553–54 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Reviewing all the evidence in the light most favorable to the termination findings under subsection E, we conclude a reasonable fact finder could have formed a firm belief or conviction as to the truth of the findings that Father endangered Fiona through his acts or omissions. Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination of Father's parental rights was warranted under section 161.001(b)(1)(E). Accordingly, we conclude the evidence is legally and factually sufficient to support the section 161.001(b)(1)(E) finding.

Having concluded that the evidence is legally and factually sufficient to support the trial court's finding of endangerment under section 161.001(b)(1)(E), we need not discuss Father's challenge to the court's finding under sections 161.001(b)(1)(D), (F), (M), (N), and (O). *See In re A.V.*, 113 S.W.3d at 362. We overrule Father's first five issues.

## C.   Best Interest of the Child

We review the entire record in deciding a challenge to the court's best-interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374

S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West Supp. 2016).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (West Supp. 2016) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating parental rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533.

1. **The desires of the child, the plans for the child by the individuals or agency seeking custody, and the stability of the home or proposed placement**

When a child is too young to express her desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Further, the stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.). A child's need for permanence through the

14

establishment of a "stable, permanent home" has been recognized as the paramount consideration in the best-interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best-interest determination. *See In re C.H.*, 89 S.W.3d at 28.

Father primarily contends that placement with paternal grandmother should have been considered. The record indicates that paternal grandmother was not a party to this proceeding and did not seek conservatorship of Fiona. *Cf. In re C.B.*, No. 01-01-00117-CV, 2002 WL 1722035, at *6 (Tex. App.—Houston [1st Dist.] July 25, 2002, no pet.) (mem. op., not designated for publication). Additionally, Father does not explain how potential placement with paternal grandmother weighs against the finding that termination of his parental rights was in Fiona's best interest.

Fiona has been in her current placement since she was three weeks old. There was no evidence that Father had visited Fiona when he was out of jail. Additionally, there was no evidence that Father could provide a stable and permanent home for Fiona. Father was in jail when Fiona was born. While he was out of jail for a time during the pendency of the case, he was back in jail at the time of trial.

There was evidence that the current caregivers, Mother's cousin and his wife, placed Fiona's well-being first and foremost. Fiona had been living with them since she was three weeks old. The caseworker testified they are meeting her emotional and physical needs and the environment is nourishing, safe, and stable. Mother believed that Fiona was bonded with her current caregivers and they were the only parents she had known. The caregivers hoped to adopt Fiona.

### 2. The present and future physical and emotional needs of the child and the present and future emotional and physical danger to the child

The evidence supporting termination under one of the grounds listed in section

161.001(b)(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest). A parent's ability to provide a child with a safe environment is a primary consideration in determining the child's best interest. *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also* Tex. Fam. Code Ann. § 263.307(b)(7), (12). The fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *See In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

As discussed herein, Father's absence from Fiona's life, coupled with his incarcerations, criminal history, including an alleged assault of Mother, and drug use create a course of conduct from which the factfinder could have determined Father endangered Fiona's emotional and physical well-being. Such evidence also weighs in favor of the trial court's finding that termination of Father's parental rights was in Fiona's best interest.

> **3. Acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate and any excuse for the parent's acts or omissions**

Father contends he was unable to comply with the Department's service plan due to his incarceration. Father contends the failure to comply with the service plan was a partial reason for termination of his parental rights. However, there was evidence supporting the best interest finding beyond Father's failure to complete a service plan. Father's criminal history and incarcerations support the trial court's best interest determination. Additionally, the evidence showed that Father was absent from Fiona's life and when given the chance to visit her during the case he did not show up. Further, there is no evidence that Father attempted to work on the service plan while out of jail during the case.

Father contends the evidence offered in support of best interest was conclusory and insufficient to support the trial court's findings. We disagree. The evidence included Father's absence from Fiona's life, incarcerations, criminal history, and drug use. Additionally, there was evidence that Fiona was in a stable and loving home with caregivers that were providing for her needs and wanted to adopt her. Further, the evidence was that Fiona knew no other parents outside of caregivers and had been with them since she was three weeks old. After considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in Fiona's best interest. We therefore overrule Father's sixth issue.

## CONCLUSION

The trial court's judgment is affirmed.


/s/    John Donovan
       Justice


Panel consists of Justices Donovan, Wise, and Jewell.